## LANGMAID *v.* MAZZA, Administratrix of the Estate of Helen M. Langmaid

[No. 161, September Term, 1971.]

*Decided January 12, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Samuel Intrater* for appellant.

*Charles W. Woodward, Jr.,* for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

This extraordinary appeal is from an order, dated 4 June 1971, of the Circuit Court for Montgomery County, sitting as the Orphans' Court, Pugh, J. (now C. J.), denying a petition for the removal of an administratrix. We have not found in the transcript of the record any testimony, any stipulation of facts, or any finding of facts. Some allegations of fact have been admitted in responsive pleadings, others have been disputed, but there is nothing upon which we could base a proper conclusion. Nevertheless, the record does seem to suggest a situation which we think ought to be fully explored and to that end we shall remand the case for further proceedings, neither affirming nor reversing the order of the learned judge below.

It is not likely there will be much dispute about the items in the record which seemed to suggest to us the existence of a situation calling for further exploration. The appellant (Langmaid) and Helen Mazza became husband and wife perhaps in 1950, perhaps earlier. Two children were born, Bruce in September 1951, Gregory in June 1956. The Langmaids were divorced in June 1962. Helen died intestate on 30 March 1966.

Helen and her sister Olga, the appellee, are the children of Louise B. Mazza, who died in May 1963. In 1954 Louise had created certain trusts, in each of which Olga was named trustee. The corpus is said to be invested in about $1,000,000 worth of realty producing little or no income. There is an allegation in the record that the corpus might be worth $20,000,000.

On 13 July 1966 Olga was appointed administratrix of the estate of Helen. Bond in the amount of $4,000 was filed and approved. An inventory of real estate, appraised at $2,826, was filed in May 1967. The inventory of personalty was filed in March 1968. A value of $11,926.30 was indicated. While the docket entries are not at all clear, e.g., they are not in chronological order, there is no doubt that Olga has succeeded in rebuffing all attempts to take her deposition, to compel her to complete the administration of the estate, and to remove her for failing to do so. A first administration account was filed in June 1969 but it is not mentioned in the docket entries and it does not appear that any action was taken thereon. In April 1971 Langmaid, who was appointed guardian for the two boys in December 1970, filed a second petition to have Olga removed as administratrix.

We were quite taken aback to discover in the transcript the document below set forth:

*"HEARING*

"Judge Pugh          June 4, 1971          11:30 A.M.

Present:    Charles W. Woodward, attorney for the administratrix

Samuel Intrater, attorney for the minor heirs

"This hearing came on pursuant to the filing of a petition for the removal of the administratrix.

"Mr. Intrater told the court that a conflict of interest exists since the administratrix is also a trustee of the family trust and as administratrix it would be her duty to collect from the Mazza family trust the sum of $3,723.96 due the estate. He cited the failure of the administratrix to file an account after all this time and charged that the estate is being virtually depleted by an exorbitant funeral bill, storage charges in excess of the value of the articles being stored and a large debt for rent owed to the family founda-

tion for the house in which the decedent lived. He said there was no reason why the two parcels of real estate had not already been sold and he asked the court to appoint the father of the minor heirs as administrator. Mr. Intrater pointed out that the Mazza family trust exceeds $1,000,000 in value and the reason that there is no money to pay the estate is that the trustee has converted the entire trust into real estate which is not income producing and this is no excuse for the administratrix not to pay the money to the estate.

"Mr. Woodward stated that the failure to file an account was not attributable to the administratrix. He said that the funeral bill has been paid, partly by the administratrix and partly with estate funds and that there is no money in the family trust to pay the estate. He told the court that the two parcels of real estate are land locked and the only way they can be sold would be for a neighboring landowner to purchase them.

"Judge Pugh later signed an order denying the petition for the removal of the administratrix.

/s/ *Eleanor D. Nichols*
Deputy Clerk"

The funeral bill was $3,731.54. The cost of storing furniture that was sold for $1,361.68 was $1,044. Moreover, the sale was not reported and, of course, has not been ratified. No attempt has been made to explain why the $3,723.96 due the estate by the trust has not been paid, except to say there is no money in the trust, which strikes us as being utter nonsense. Olga claims also that the estate owes the trust $6,890 for rent owed by Helen from 1 November 1960 to the day of her death. The terms of the lease, whether oral or written, are not mentioned.

Upon remand Judge Pugh quite likely will encourage

the parties to employ the discovery mechanisms provided by the Maryland Rules of Procedure. If the parties make full use thereof evidentiary hearings in open court probably will not be necessary.

> *Neither affirmed nor reversed.*
> *Case remanded for further proceedings not inconsistent with the views expressed in this opinion.*
> *Costs to be paid by the appellee in her individual capacity.*